UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MELINDA ROBINSON,

                                    Plaintiff,

            vs.

GENEVA HOUSING AUTHORITY, ANDREW TYMAN,
individually, and in his capacity as Executive Director of the
Geneva Housing Authority, and ELAINE REAVIS,
individually.

                                    Defendants.

---

CIVIL ACTION NO.:

COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    This is an action for declaratory judgment, permanent injunctive relief, and monetary and punitive damages brought by plaintiff Melinda Robinson, a black woman. This action challenges the Defendants' discrimination on the basis of race, including unlawful interference with Ms. Robinson's federally-subsidized Housing Choice Voucher, in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. § 1983.

2.    Plaintiff claims that Defendant Elaine Reavis acted with the knowledge of the Geneva Housing Authority as part of its pattern or practice of discriminatory treatment of black women. As a result of the Defendants' actions, Ms. Robinson was unable to enjoy the full use of her Housing Choice Voucher, a federal program designed to provide accessible, affordable housing.

## II.    JURISDICTION AND VENUE

3.    Jurisdiction is conferred on the Court by 28 U.S.C. § 1331 providing for jurisdiction over federal questions, 28 U.S.C. § 1337 providing jurisdiction over Congressional acts regulating commerce, and 28 U.S.C. § 1343 providing jurisdiction over actions to redress deprivation of equal rights.

4.    Plaintiff's request for declaratory relief is authorized by 28 U.S.C. § 2201.

5.    Venue is in the Western District of New York, where a substantial part of the events or omissions giving rise to the claim occurred, and where defendant is a corporation doing business in the district, pursuant to 28 U.S.C. § 1391(b).

## III.    PARTIES

6.    Plaintiff Melinda Robinson is a 52-year old Black woman. Ms. Robinson is and was a resident of Ontario County, New York at the time of the events giving rise to this lawsuit.

7.    Plaintiff Melinda Robinson was a participant in the federal Housing Choice Voucher program (colloquially known as the Section 8 program), which helps to create affordable housing for participants.

8.    Defendant is the Geneva Housing Authority (hereinafter GHA), the quasi-governmental agency created under Section 463 of Public Housing Law to administer the Section 8 subsidy program. NY CLS Pub. Hous. Section 463.

9.    Elaine Reavis is a former employee of the Geneva Housing Authority. Upon information and belief, Ms. Reavis was working as a caseworker in the Housing Choice Voucher program at Geneva Housing Authority at the time these incidents occurred. She is being sued in her personal capacity.

10.    Andrew Tyman is the executive director of the Geneva Housing Authority. He is being sued in both his official and personal capacities.

## IV.    STATUTORY AND REGULATORY FRAMEWORK

### A.    THE CIVIL RIGHTS ACT OF 1866

11.    The Civil Rights Act of 1866 prohibits discrimination in the rental of housing on the basis of race. 42 U.S.C. §§ 1981 and 1982.

12.    In particular, 42 U.S.C. § 1981 provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...as is enjoyed by white citizens…" and 42 U.S.C. § 1982 provides that: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

### THE CIVIL RIGHTS ACT OF 1871

13.    Under the Fourteenth Amendment to the United States Constitution, a state may not "deprive any person of life, liberty or property without due process of law."

14.    Under the Fourteenth Amendment to the United States Constitution, no State shall " deny to any person within its jurisdiction the equal protection of the laws."

15.    Under the Civil Rights Act of 1871 (42 U.S.C. § 1983), a person has a cause of action against an official who, acting under "color of state law", deprives her of a Constitutional or federal right.

16.    Violations of the U.S. Constitution, including the Fourteenth Amendment, are enforceable under 42 U.S.C. § 1983.

17.    Actions taken by a public housing authority are actions under color of law for purposes of 42 U.S.C. § 1983 liability.

## V. FACTS

18.    Plaintiff Melinda Robinson is a 52-year old Black woman. She is a resident of Ontario County, and has been for virtually all of her life. Ms. Robinson graduated from Geneva High School in 1987, and from Finger Lakes Community College in 1996 with an Associate's Degree in Business Administration. She worked for most of her life, until she became unable to work and began collecting Social Security Disability.

19.    Ms. Robinson most recently became a participant in the Housing Choice Voucher program administered by GHA in the fall of 2015.

20.    Defendant Elaine Reavis was appointed as Ms. Robinson's caseworker with respect to her Housing Choice Voucher.

21.    Upon information and belief, Elaine Reavis has a pattern of unlawful interference with Ms. Robinson's ability to use her Section 8 voucher as provided by law.

### *Improper Voucher Issuance and Interference with Rental on North Street*

22.    In approximately November 2018, Ms. Reavis issued Ms. Robinson a Housing Choice Voucher authorizing assistance for a one-bedroom apartment, despite the fact that Ms. Robinson was eligible for a two-bedroom apartment.

23.    Ms. Robinson, who had been searching for a two-bedroom apartment due to her household composition, secured a two bedroom apartment on North Street in Geneva, New York. After this apartment was secured, Ms. Robinson discovered that she had incorrectly been issued a one-bedroom voucher instead of the two-bedroom voucher she was entitled to.

24.    Ms. Robinson contacted the Geneva Housing Authority to correct the issue, but was told that Elaine Reavis was on vacation and the issue could not be corrected until Ms. Reavis' return.

25.    On November 19, 2018, Ms. Robinson made a request for a fair hearing regarding her voucher. This request was not granted.

26.   Ms. Reavis and Ms. Robinson set a meeting to reissue the correct voucher to Ms. Robinson on or about November 26, 2018.

27.   Ben Allen, the landlord of the two-bedroom apartment that Ms. Robinson found, had agreed to hold the apartment until Ms. Robinson could meet with Ms. Reavis to be issued a proper voucher. Ms. Robinson confirmed the continuing availability of the apartment on North Street on the date of her meeting with Ms. Reavis.

28.   At that meeting, Ms. Reavis indicated that she had spoken with Ben Allen, the landlord of the North Street apartment and that the apartment was no longer available.

29.   Confused, Ms. Robinson contacted the landlord during the meeting, who informed Ms. Robinson that he had received word from Ms. Reavis stating that Ms. Robinson was not eligible for the apartment, and as a result he had moved on.

30.   Moreover, at that meeting, Ms. Reavis covered her improper voucher issuance by deflecting blame onto the African-American head of the Department of Housing and Urban Development (HUD), Dr. Ben Carson. Ms. Reavis claimed that the one-bedroom voucher she issued was originally proper, but HUD (the federal department that oversees the Housing Choice Voucher program) had recently changed their policies. Specifically, Ms. Reavis gave an explanation which indicated that HUD policy now allowed for two-bedroom vouchers as a result of the widely-reported scandal concerning Dr. Ben Carson and a meeting table, which had freed up money in HUD's budget.

31.   Ms. Robinson was eventually issued a two-bedroom voucher. However, she was not able to use it at the apartment on North Street due to Ms. Reavis' interference.

### Interference with Rental at Geneva Garden Apartments

32.   The incident regarding the apartment on North Street was not the only incident where Ms. Robinson lost an apartment after initially being told that one was available.

5

33. Shortly after the incident with the apartment on North Street, Ms. Robinson experienced interference with her ability to use her Section 8 voucher at the Geneva Garden Apartments in Geneva, New York.

34. Ms. Robinson initially made contact with the property manager at Geneva Garden Apartments, and met with the property manager, during which time Ms. Robinson was told that there were a couple units that would be available within the month. The property manager was aware that Ms. Robinson held a Housing Choice Voucher through the Geneva Housing Authority.

35. While Ms. Robinson was at Geneva Garden Apartments, the daughter of the property manager asked her mother for help connecting with a person in the social services field to do an interview for a class. Ms. Robinson was present when the property manager suggested Elaine Reavis at the Geneva Housing Authority, and made arrangements for her and her daughter to buy lunch for Ms. Reavis on November 28, 2018.

36. On November 28, 2018, Ms. Robinson emailed a complaint to the Geneva Housing Authority, detailing that she believed Ms. Reavis was discriminating against her on the basis of race. This November 28, 2018 complaint reiterated that Ms. Robinson had made previous complaints against Ms. Reavis, which were not addressed. In this email, Ms. Robinson also reiterated her request for a fair hearing regarding Ms. Reavis' interference with her voucher and her concern that this interference would continue with the apartment at Geneva Garden Apartments or any future apartment. The November 28, 2018 complaint and request for fair hearing was sent to three employees at the Geneva Housing Authority - Hillary Iannopollo, Dawn Bedell, and Robert Doeblin.

37. As she feared, Ms. Robinson was ultimately unable to secure an apartment at Geneva Garden Apartments. When Ms. Robinson called a short time later to inquire about the apartments at

Geneva Garden Apartments, the property manager's attitude had completely shifted, and Ms. Robinson was told that there was nothing available, despite her very recent previous representations of availability.

38. Upon information and belief, the reason for this sudden shift in the property manager's responses regarding availability was a meeting that occurred between Elaine Reavis and the property manager the day after Ms. Robinson's meeting at Geneva Garden Apartments.

39. Ms. Robinson's request for a fair hearing regarding the discriminatory interference with her voucher was denied by the Geneva Housing Authority, in a letter dated December 18, 2018.

### *Other Incidents of Unlawful Interference with Ms. Robinson's use of her Housing Choice Voucher*

40. In September and October 2017, prior to the events described above, Ms. Reavis improperly calculated Ms. Robinson's household income.

41. Specifically, Ms. Reavis inaccurately and improperly used a child support verification for an unrelated child, and added this child support income to Ms. Robinson's household despite the fact that the child did not live with Ms. Robinson and had no relation to Ms. Robinson.

42. Moreover, in September 2017, Ms. Robinson reported to the Geneva Housing Authority that she was no longer receiving Social Security Disability. Ms. Reavis should have taken this income out of Ms. Robinson's household calculations effective October 1, 2017, but did not.

43. On the same day in September 2017, Ms. Robinson reported that her son Ravaugn was no longer employed. Ms. Reavis should have taken Ravaugn's income out of Ms. Robinson's household calculations effective October 1, 2017, but did not.

44. Effective November 1, 2017, Ms. Reavis re-reviewed Ms. Robinson's file and corrected Ms. Robinson's income, but still improperly included her son Ravaugn's income and the unrelated child support income in the household calculations.

45. Effective December 1, 2017, Ms. Reavis again re-reviewed Ms. Robinson's file, but still improperly included the unrelated child support income.

46. Ms. Reavis also mailed Ms. Robinson a termination letter, stating that due to her "income", she would be terminated from the program. This letter was sent despite the HUD regulations that allow a participant's subsidy to drop to $0 for six months without termination from the program.

47. Under Housing Choice Voucher program regulations, Ms. Robinson had a right to a fair hearing regarding her household's income calculations. Ms. Robinson made telephone calls, left messages, and asked for appointments at the Geneva Housing Authority to try to untangle the inaccurate income, but was unable to get through to Ms. Reavis to discuss the inaccurate income.

48. Ms. Reavis' supervisors at the Geneva Housing Authority were aware of Ms. Reavis' improper handling of Ms. Robinson's file, including the inclusion of income entirely unrelated to Ms. Robinson's household, and Ms. Reavis' mailing of an unauthorized and improper termination notice.

49. Sometime in November 2017, Ms. Robinson was finally able to get Ms. Reavis' supervisor, Hillary Iannopollo, to review the file. Ms. Iannopollo found the incorrect income and rescinded the termination notice.

50. As far back as at least November 2017, the Geneva Housing Authority was aware of Ms. Reavis' improper actions and omissions with regard to Ms. Robinson's Housing Choice Voucher file.

51. Ms. Robinson's file at the Geneva Housing Authority contains an unsigned memo dated November 9, 2017 to Ms. Reavis outlining her improper actions with regard to Ms. Robinson's file and directing her to correct the issues.

52.  Moreover, as far back as at least November 2018, the Geneva Housing Authority was aware of Ms. Robinson's complaints of discrimination against Ms. Reavis.

53.  Ms. Robinson has consistently made a series of complaints to the Geneva Housing Authority regarding unfair treatment by Ms. Reavis, which have not been adequately addressed.

54.  In January 2019, Ms. Robinson met with Andrew Tyman, the director of the Geneva Housing Authority, to explain why she was relinquishing her Housing Choice Voucher.

55.  Even after leaving the program, Ms. Robinson continued to make complaints about her treatment by the Defendants. Eventually, when she and other black women went to the news media, the Geneva Housing Authority announced that it would be conducting an internal audit of Ms. Robinson's complaints. Under additional pressure, the Geneva Housing Authority hired an outside firm to review the allegations.

56.  The full results of the internal and law firm audits were never released publicly, nor was a copy given privately to Ms. Robinson.

### *The Actions and Omissions Against Ms. Robinson were Based on Race*

57.  Upon information and belief, the actions taken and acts omitted by Ms. Reavis and the Geneva Housing Authority were based on racial animus.

58.  On many occasions, Ms. Robinson had personal interactions with Ms. Reavis where she made racialized statements, including repeated use of the disparaging term "you people", in connection with inaccurate and overbroad statements about both African Americans generally and participants in the Housing Choice Voucher program.

59.  Ms. Reavis made repeated statements to Ms. Robinson that were steeped in the racist stereotype of a "welfare queen." Through these statements, Ms. Robinson came to understand that Ms. Reavis believed that participants in the Housing Choice Voucher program were not entitled to assistance and were abusing the program. More particularly, Ms.

Robinson came to understand that this "abuse" was particularly concentrated among black, and especially black female, participants in the Housing Choice Voucher program.

*Impact of Geneva Housing Authority's unlawful conduct*

60. The conduct of Elaine Reavis and her supervisors at the Geneva Housing Authority caused Ms. Robinson significant harm.

61. For years, Ms. Robinson lived in fear that the roof over her and her children's heads was subject to the discriminatory whims of Elaine Reavis.

62. Ms. Robinson also had to experience the personal indignity of years of racialized statements made by Ms. Reavis, and years of Ms. Reavis' supervisors ignoring Ms. Robinson's legitimate complaints and requests for help.

63. Ms. Robinson endured the embarrassment of being denied and losing housing which she was qualified for and should have been able to get.

64. Ms. Reavis' improper voucher issuance in 2017, and her subsequent interference with Ms. Robinson's rental applications, ultimately resulted in Ms. Robinson and her children being forced to relocate temporarily to emergency housing infected with bed bugs for several months. Ms. Robinson and her children suffered stress and anxiety as well as the considerable physical and psychological discomfort of bed bugs while staying at the emergency housing until she was able to secure an apartment in February 2019 (without the use of her Housing Choice Voucher).

65. Ultimately, the actions of Ms. Reavis and the Geneva Housing Authority made Ms. Robinson feel that it was impossible for her to use her Housing Choice Voucher within Ontario County. Ms. Robinson attempted to escape the Geneva Housing Authority by having her voucher transferred to Wayne County. Wayne County processed this request, but by this time Ms. Robinson had completely lost confidence in the structures that were supposed to help her. In

January 2019, she finally withdrew from the program entirely, having her older children move in with her in order to replace the financial loss of her Housing Choice Voucher.

66. The events surrounding Ms. Robinson's Housing Choice Voucher caused pecuniary loss as well as emotional distress, embarrassment, and anxiety and depression.

67. Ms. Robinson saw a psychiatrist during this time to discuss the profound emotional impact of these events.

## VI. CAUSES OF ACTION

### First Cause of Action - Deprivation of Civil Rights under 42 U.S.C. § 1981

68. By engaging in the discriminatory conduct described above, the Defendants deprived Ms. Robinson, a black woman, of the same right enjoyed by white persons to make and enforce a contract, specifically a lease for real property. In so doing, the defendant acted intentionally and maliciously to damage the rights of Ms. Robinson, in violation of 42 U.S.C. § 1981.

### Second Cause of Action - Deprivation of Civil Rights under 42 U.S.C. § 1982

69. By engaging in the discriminatory conduct described above, the Defendants deprived Ms. Robinson, a black woman, of the same right enjoyed by white citizens to lease and hold real property on the basis of her race. In doing so, the Defendants acted intentionally and maliciously to damage the rights of Ms. Robinson, in violation of 42 U.S.C. § 1982.

### Third Cause of Action - Deprivation of Constitutional Rights under 42 U.S.C. § 1983

70. By engaging in the discriminatory conduct described above, the Defendants, acting under color of law, deprived Ms. Robinson, a black woman, of her Constitutional rights to Equal Protection and Due Process. In so doing, the Defendants acted intentionally and maliciously to damage the rights of Ms. Robinson, in violation of 42 U.S.C. § 1983.  These actions were

11

taken with the knowledge and support of the Geneva Housing Authority administration, and the Geneva Housing Authority has liability for the deprivation of Ms. Robinson's rights. *See Monell v. New York Village Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).

**WHEREFORE**, Plaintiff **MELINDA ROBINSON** respectfully requests that this court

A. Assume jurisdiction over this action; and

B. Declare the Defendants' actions complained of herein to be in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, and the Fourteenth Amendment to the U.S. Constitution, enforced through the Civil Rights Act of 1871, 42 U.S.C. § 1983; and

C. Order Defendants to take appropriate affirmative action to insure that the activities complained of are not engaged in again by it or any of its agents; and

D. Permanently enjoin Defendants, its agents, employees and successors from discriminating on the basis of race against any person in violation of the Civil Rights Act of 1866 or the U.S. Constitution; and

E. Award appropriate punitive and compensatory damages to Plaintiff and against Defendants, jointly and severally; and

F. Award Ms. Robinson attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

G. Provide such further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all issues.

Dated: November 2, 2021          Respectfully submitted,

_____
Kari A. Talbott, Of Counsel
LEGAL ASSISTANCE OF WESTERN NEW YORK, INC.
Attorneys for Plaintiff Melinda Robinson
361 S. Main Street
Geneva, NY 14456
Telephone: (315) 781-1465
Email: ktalbott@lawny.org